No. 26-20106

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

---

**MONIQUE MASON-KELLY,**
*Plaintiff-Appellant*
*v.*
**HOUSTON INDEPENDENT SCHOOL DISTRICT; ROSA HERNANDEZ, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; FERMIN PLANCARTE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:23-cv-03185
Hon. Andrew S. Hanen, United States District Judge

---

# APPELLANT'S BRIEF

---

John L. Pittman III, Esq., LLM[2]
Texas Bar No. 24127922
**John L. Pittman III | Attorney At Law, APC**
925 B Street, Suite 604
San Diego, CA 92101
Phone: (760) 575-4040
Fax: (877) 757-5264
Email: jlpittmaniii@jp3law.com
**Attorney for Appellant**
**MONIQUE MASON-KELLY**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

| **Role** | **Name / Entity** |
| --- | --- |
| Plaintiff-Appellant | Monique Mason-Kelly |
| Defendant-Appellee | Houston Independent School District |
| District-court defendant | Rosa Hernandez, individually and in her official capacity |
| District-court defendant | Alvin Goldman, individually and in his official capacity |
| District-court defendant | Fermin Plancarte, individually and in his official capacity |
| District-court defendant | Deshonta Everett, individually and in his official capacity |

| | |
|---|---|
| Counsel for Plaintiff-Appellant | John L. Pittman III; John L. Pittman III \| Attorney At Law, APC |
| Former counsel for Plaintiff-Appellant | Terry Henderson Peden, Jr.; The Law Group of THP, PLLC |
| Counsel for Appellee Houston ISD | Paul A. Lamp and Elizabeth M. Rice; Spalding Nichols Lamp Langlois |
| District judges | Hon. Kenneth M. Hoyt (recused); Hon. Andrew S. Hanen |
| Court reporter / deposition reporter appearing in the record | Christopher D. Reho, CSR, RPR; Hanna & Hanna, Inc. |

*/s/ John L. Pittman III*
John L. Pittman III
**Attorney for Appellant MONIQUE MASON-KELLY**

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument. This appeal presents a fact-intensive employment-discrimination and disability-accommodation record decided on summary judgment after the district court applied an adverse-action and comparator analysis that conflicts with *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc), and *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). The appeal also requires careful review of the evidence HISD itself filed in support of summary judgment, including Mason-Kelly's sworn EEOC charges, deposition testimony, ADA accommodation requests, and contemporaneous emails. Oral argument would materially assist the Court in applying the corrected Title VII standard and in evaluating whether the ADA and retaliation claims were improperly resolved by drawing inferences against the nonmovant.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................... 2

STATEMENT REGARDING ORAL ARGUMENT ........................................... 4

TABLE OF CONTENTS.......................................................................................... 5

TABLE OF AUTHORITIES ........................................................................... 7

STATEMENT OF JURISDICTION ................................................................ 10

STATEMENT OF ISSUES ............................................................................. 12

STATEMENT OF THE CASE ....................................................................... 14

A. Course of Proceedings and Disposition Below .............................................. 14

B. Mason-Kelly's Background and the Protected Reports That Started the Dispute ................................................................................................................ 15

C. The Disability Accommodation Record .......................................................... 17

D. September 2022: Return to Work, Accessibility Complaints, Hot Classroom, and Escalation ......................................................................................................... 19

E. The Sworn EEOC Charges in HISD's Own Exhibit ........................................ 21

F. Proposed Nonrenewal and Judgment ............................................................... 23

SUMMARY OF THE ARGUMENT .................................................................. 25

STANDARD OF REVIEW ................................................................................... 28

ARGUMENT AND AUTHORITIES .................................................................. 29

I. The district court erred by treating the case as evidentiary empty when HISD's own summary-judgment record created genuine disputes ................................... 29

II. The Title VII and TCHRA discrimination ruling applied an outdated adverse-action and comparator framework ...................................................................... 32

A. Hamilton and Muldrow reject the "final adverse employment action" requirement applied below ........................................................................... 32

B. Comparator evidence was not the only path to a jury trial ............................... 34

C. A jury could find HISD's reasons pretextual or incomplete ............................ 36

III. The retaliation claims under Title VII, the TCHRA, and the ADA should have been tried ........ 37

A. The record contains protected activity ........ 37

B. The record contains materially adverse actions ........ 38

C. The record supports causation at the prima facie stage and pretext at the ultimate stage ........ 40

IV. The ADA discrimination and failure-to-accommodate ruling should be reversed ........ 42

A. The court improperly used Mason-Kelly's later absences to erase the accommodation question ........ 42

B. The requested accommodations were legally cognizable ........ 44

C. HISD's evidence did not eliminate disputes over disability discrimination .... 46

V. The Rule 4(m) dismissal of Hernandez and the final judgment require correction ........ 47

VI. The proper remedy is reversal, vacatur, and remand ........ 48

CONCLUSION ........ 50

PRAYER FOR RELIEF ........ 51

CERTIFICATE OF COMPLIANCE ........ 53

CERTIFICATE OF SERVICE ........ 54

# TABLE OF AUTHORITIES

## CASES

*Alamo Heights Independent School District v. Clark*, 544 S.W.3d 755 (Tex. 2018) ........................................................................ 33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................... 28, 29

*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) . 38, 41

*Cannon v. Jacobs Field Services North America, Inc.*, 813 F.3d 586 (5th Cir. 2016) .......................................................................................... 27, 42

*Cutrera v. Board of Supervisors of Louisiana State University*, 429 F.3d 108 (5th Cir. 2005) ........................................................................... 27, 38, 44

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) .................................................. 34

*EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606 (5th Cir. 2009) . 27, 44

*EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014) .................. 27, 41, 42, 46

*Feist v. Louisiana, Department of Justice, Office of the Attorney General*, 730 F.3d 450 (5th Cir. 2013) ......................................................................... 27, 38, 43

*Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165 (5th Cir. 2014) ..... 38, 40

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc) ........................ ........................................................................ 4, 12, 25, 32, 33, 34, 35

*Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. 2003) .......................................... 36, 40

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................. 34

*Millan v. USAA General Indemnity Co.*, 546 F.3d 321 (5th Cir. 2008) ............... 47

*Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629 (Tex. 2012) .......................................................................................... 33

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ................... 4, 12, 25, 32, 33, 34

*Nall v. BNSF Railway Co.*, 917 F.3d 335 (5th Cir. 2019) .............................. 28, 31

*Porter v. Houma Terrebonne Housing Authority Board of Commissioners*, 810 F.3d 940 (5th Cir. 2015) ........................................................................ 40

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) ............................. 34

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) .. 28, 31, 36, 40

*Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996) ..... 42

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) .... 34, 35

*Thrasher v. City of Amarillo*, 709 F.3d 509 (5th Cir. 2013) .......................... 28, 47

*Tolan v. Cotton*, 572 U.S. 650 (2014) .................................................................. 28

**STATUTES**

28 U.S.C. § 1291 ............................................................................................ 10

28 U.S.C. § 1331 ............................................................................................ 10

28 U.S.C. § 1367 ............................................................................................ 10

28 U.S.C. § 1441 ............................................................................................ 10

28 U.S.C. § 1446 ............................................................................................ 10

28 U.S.C. § 2107(a) ........................................................................................ 10

42 U.S.C. § 12101 et seq. ................................................................... 10, 13, 44

42 U.S.C. § 12111(8) ...................................................................................... 42

42 U.S.C. § 12111(9)(B) ................................................................................. 44

42 U.S.C. § 12203(a) ...................................................................................... 38

42 U.S.C. § 1981 ..................................................................................... 10, 14

42 U.S.C. § 1983 ............................................................................................ 14

42 U.S.C. § 2000e et seq. ............................................................ 10, 13, 33, 38

42 U.S.C. § 2000e-2(a)(1) .............................................................................. 33

42 U.S.C. § 2000e-3(a) ................................................................................... 38

Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq. .... 14, 33, 36

Tex. Lab. Code § 21.051 .......................................................................... 33

Tex. Lab. Code § 21.055 .......................................................................... 38

**RULES**

Fed. R. App. P. 4(a)(1)(A) ....................................................................... 10

Fed. R. App. P. 32(a)(5) .......................................................................... 52

Fed. R. Civ. P. 4(m) .................................................... 10, 13, 24, 28, 47, 48

Fed. R. Civ. P. 56 ................................................................ 26, 28, 29, 49

Fed. R. Civ. P. 56(a) .............................................................................. 28

Fed. R. Civ. P. 56(c)(1)(A) ...................................................................... 28

5th Cir. R. 28.2.1 .................................................................................... 2

## STATEMENT OF JURISDICTION

The district court had federal-question jurisdiction because the removed action pleaded federal employment and civil-rights claims under Title VII, the ADA, 42 U.S.C. § 1981, and constitutional theories. HISD removed the case under 28 U.S.C. §§ 1331, 1441, and 1446, and invoked supplemental jurisdiction under 28 U.S.C. § 1367 over the parallel Texas Labor Code Chapter 21 claims. ROA.7-8. The district docket identifies the case as a civil-rights employment matter, Nature of Suit 442, and shows federal-question jurisdiction. ROA.1.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered an order granting HISD's renewed motion for summary judgment and dismissing the case, ROA.949-70, followed by a separate final judgment on March 9, 2026. ROA.971. Mason-Kelly filed her notice of appeal on March 10, 2026, within thirty days of judgment. ROA.972-73; see Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a). The appeal was docketed in this Court as No. 26-20106.

The final judgment states that the case is dismissed with prejudice. ROA.971. The summary-judgment order states that all claims against HISD are dismissed with prejudice and that claims against Rosa Hernandez are dismissed without prejudice under Rule 4(m). ROA.969-70. To the extent the final judgment

creates ambiguity or overbreadth by dismissing the entire above-styled case with prejudice, the judgment should be vacated or corrected on remand.

## STATEMENT OF ISSUES

1. Whether the district court erred in granting summary judgment where HISD's own summary-judgment record included Mason-Kelly's deposition testimony, sworn EEOC charges, ADA accommodation requests, and contemporaneous emails showing genuine disputes over protected activity, disability accommodations, retaliatory conduct, and causation.
2. Whether the district court applied the wrong legal standard to Mason-Kelly's Title VII and TCHRA discrimination claims by requiring a "final" adverse employment action and a near-identical comparator after *Hamilton* and *Muldrow*, rather than asking whether the evidence showed discrimination affecting compensation or the terms, conditions, or privileges of employment.

3. Whether the district court erred in dismissing the Title VII, TCHRA, and ADA retaliation claims by disregarding evidence that Mason-Kelly filed grievances and EEOC charges, requested ADA accommodations, complained about accessibility and unsafe classroom conditions, and was thereafter subjected to disputed materially adverse actions ending in proposed nonrenewal.

4. Whether the district court erred in dismissing the ADA claims by treating Mason-Kelly's absences as dispositive of qualification while failing to account for evidence that those absences followed unresolved accommodation requests, alleged retaliation, inaccessible parking, a hot classroom, and a requested reassignment recommended by her physician.

5. Whether the district court erred in dismissing claims against Rosa Hernandez under Rule 4(m), or at minimum whether the final judgment should be corrected because the order dismissed Hernandez without prejudice while the judgment purports to dismiss the case with prejudice.

# STATEMENT OF THE CASE

## A. Course of Proceedings and Disposition Below

Mason-Kelly filed this employment-discrimination case in Harris County, Texas, and HISD removed it to the Southern District of Texas on August 29, 2023. ROA.7-9. The operative First Amended Complaint alleged discrimination and retaliation based on race, national origin, color, disability, and protected activity under Title VII, the ADA, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Fourteenth Amendment, and Texas Labor Code Chapter 21. ROA.67-87. The district court later narrowed the case, leaving the Title VII, TCHRA, and ADA claims against HISD, and leaving an unresolved defendant, Rosa Hernandez, who had not appeared. ROA.955-56, 964, 969.

HISD filed an initial motion for summary judgment. ROA.268-94. Mason-Kelly moved to compel discovery after a discovery dispute. ROA.466-83. The district court granted that motion in part and denied it in part, ordered HISD to provide discovery responses within twenty-one days, denied HISD's motion for protective order, denied HISD's summary-judgment motion without prejudice, and vacated the then-existing trial schedule. ROA.678-79. HISD then filed the renewed motion for summary judgment now at issue. ROA.680-706.

Mason-Kelly opposed the renewed motion. ROA.878-909. HISD moved to strike the response, ROA.912-25, and Mason-Kelly responded. ROA.927-47. The district court denied the motion to strike, considered the response, and granted HISD's renewed motion for summary judgment. ROA.949, 959 n.1, 969-70. The court entered final judgment on March 9, 2026. ROA.971. Mason-Kelly filed her notice of appeal the next day. ROA.972-73.

**B. Mason-Kelly's Background and the Protected Reports That Started the Dispute**

Mason-Kelly is a Black educator with decades of classroom experience. Her complaint alleged that she had more than thirty-five years of classroom experience and had worked for HISD for roughly fifteen years. ROA.72. Her deposition testimony, filed by HISD, similarly stated that she had been a teacher for thirty-six years and had been at HISD for fifteen years. ROA.744. HISD did not argue that she lacked the education, certifications, experience, or professional prerequisites for the job. The district court acknowledged that HISD did not challenge her necessary prerequisites to teach. ROA.965.

The dispute began with race-based complaints at Welch Middle School. The operative complaint alleged that in November 2021, students reported to Mason-Kelly that a White Hispanic teacher had used the words "Nigger" and "Bitch"

toward Black students in a sixth-grade classroom. ROA.72. Mason-Kelly gave the students' written account to Assistant Principal Alvin Goldman and Teacher Specialist Fermin Plancarte, and then reported the matter to Principal Rosa Hernandez. ROA.72-74. The complaint alleged that Hernandez minimized the situation, defended the conduct, and responded in a way that left Black students and Mason-Kelly without meaningful protection. ROA.73-74.

HISD's own deposition transcript confirmed the core protected nature of these reports. Defense counsel asked Mason-Kelly whether Fernandez and Hernandez used racial slurs toward students. Mason-Kelly answered yes. Counsel then asked, "And you complained about that?" Mason-Kelly again answered yes. ROA.724. Mason-Kelly testified that she believed Hernandez gave her a hard time because Mason-Kelly submitted a discrimination grievance concerning the campus. ROA.724.

Mason-Kelly filed her first HISD grievance on November 17 or 18, 2021. The complaint alleged that the grievance concerned discrimination and retaliation and that HISD never meaningfully investigated it. ROA.74. In deposition, she again testified that she filed a grievance in November 2021 and that retaliatory actions began after that grievance. ROA.742. She also filed an EEOC charge on March 21, 2022, digitally signed under penalty of perjury, charging race and

disability discrimination. ROA.848-49. She later signed an amended charge under penalty of perjury on December 26, 2022, alleging continuing race, disability, and retaliation. ROA.850-51.

### C. The Disability Accommodation Record

Mason-Kelly's disability-related evidence was not outside the summary-judgment record. HISD filed it. Her medical restrictions and ADA forms showed both physical and mental-health limitations. After a medical leave in spring 2022, her physician cleared her to return to work with access to elevators because of arthritis in both knees and permission to sit as needed during the workday. ROA.950-51. In deposition, Mason-Kelly confirmed that her September 2022 return-to-work paperwork required access to elevators, including an elevator key, and noted limitations involving climbing stairs and standing for long periods. ROA.728.

On September 20, 2022, Mason-Kelly submitted formal ADA accommodation request forms to HISD. ROA.729. The first stated that she had been diagnosed with post-traumatic stress disorder, emotional distress, and anxiety, and that the condition was tied to continuous retaliatory actions and workplace bullying after she filed HISD grievances and reported discriminatory and retaliatory actions to the EEOC. ROA.729. The requested accommodation was a

physician-recommended job reassignment mutually agreed upon to reduce PTSD, anxiety, and emotional-distress symptoms. ROA.729. The second stated that she had arthritis in both knees, needed access to elevators and/or an elevator key instead of climbing stairs, and needed a chair as needed when inflammation occurred. ROA.729.

The record also showed that a reassignment was not some abstract or impossible concept. In deposition, Mason-Kelly testified that teachers could transfer during open transfer season and that, outside the open-transfer period, a transfer could occur if both principals approved it. ROA.729-30. She testified that she contacted HR in September 2022, that there was an open multicultural classroom position, that she wanted to apply and transfer out, and that HR initially failed to return calls. ROA.730. She later testified that she completed an assessment, was told she did not make the pool, complained in writing to Jeremy Grant-Skinner in HR, and was told someone would work with her to help her get to another school before that person stopped responding. ROA.731.

Mason-Kelly also testified that she contacted upper-level HISD personnel for help, including Jeremy Grant-Skinner, Cesar Martinez, and Superintendent House. ROA.732-33. This testimony directly undermined the district court's characterization that the record simply showed no transfer effort and no possible

transfer. The record showed a request, a physician recommendation, HR contact, a then-open position, an assessment, a complaint about the process, and an HR representation that someone would help her get to another location. ROA.729-33.

**D. September 2022: Return to Work, Accessibility Complaints, Hot Classroom, and Escalation**

Mason-Kelly returned to Welch Middle School in September 2022. The district court found that she reported to work from September 20 through September 28, 2022. ROA.952. The evidence of what occurred that week was not one-sided. In a September 23, 2022 email filed by HISD, Mason-Kelly complained directly to Principal Everett and copied campus personnel that her classroom air conditioning was not working, that the room had reached 80 degrees on September 20 and 21, and that the room was 78 to 79 degrees on September 23. ROA.845. She expressly connected those conditions to her recent FMLA leave for PTSD, emotional distress, and anxiety, and to her worsening health upon returning to Welch. ROA.845.

The same email documented accessibility issues. Mason-Kelly wrote that handicap parking signs had been removed from the front of the school and replaced with "Visitor" signs; that designated areas painted with the International Symbol of Accessibility had "Visitor" signs posted in front of them; that another handicap

area's accessibility symbol had been painted over; and that she had been told there were no key cards to access the building. ROA.845. She explained that she had to park in the back and either wait for another Welch employee to let her in or walk around to the front entrance. ROA.845. She wrote that the lack of accessibility contributed to her PTSD, emotional distress, and anxiety and caused arthritis flare-ups in both knees. ROA.845.

That was not merely argument by counsel; it was a contemporaneous workplace email in HISD's own summary-judgment exhibit. Mason-Kelly requested resolutions because she could not work and meet expectations in a room at 78 to 80 degrees for three of four days. ROA.845. Later that same day, she wrote that room 516 stayed at 80 degrees or higher, was too hot to concentrate, made it extremely difficult to complete tasks, and caused nausea, dizziness, and a headache. ROA.846. Everett responded only that a work order had been put in. ROA.846.

Her deposition testimony corroborated the email. She testified that Everett had removed all handicap signs, that she complained, that her knees were hurting, that an HFT representative contacted Everett, and that Everett became angry and approached her after school. ROA.743. She testified that Everett deliberately put her in a room with no air, with temperatures of 80, 81, and 82 degrees, and that

when she complained, he increased what she had to do. ROA.743. She testified that she eventually experienced an anxiety attack, went to urgent care, had to be released with a family member, and went out on FMLA because she could not be an effective teacher in that condition. ROA.744.

On the parking issue, Mason-Kelly testified that Everett removed handicap signs and replaced them with visitor or reserved signs; she estimated about six spaces were affected; she had previously parked there with her handicap hanging tag; and when those spaces were changed, she parked behind the building and waited for someone to let her in because she could not walk around due to arthritis. ROA.744. On the air-conditioning issue, she testified that the district controlled the thermostat and that other reading teachers she spoke with had air in their rooms. ROA.751.

**E. The Sworn EEOC Charges in HISD's Own Exhibit**

The district court repeatedly stated that Mason-Kelly provided no evidence. ROA.950, 959, 961-64. But HISD filed Mason-Kelly's sworn EEOC charges as summary-judgment evidence. The original charge, digitally signed under penalty of perjury on March 21, 2022, stated that since May 2021 Mason-Kelly noticed different treatment due to race by Hernandez and Goldman; that Hernandez placed non-Blacks into positions without posting them, including a GT Magnet

Coordinator position; that Mason-Kelly believed she was better qualified than the selected Hispanic female; that she requested a medical accommodation for an elevator key starting in April or May 2021 but did not receive one until December 2021, enduring pain in the meantime; that she filed several grievances; that her time was questioned; that she mentored only one person, affecting pay, while non-Blacks mentored more than one; and that she was removed from tutoring without knowing it. ROA.848-49.

The amended charge, signed under penalty of perjury on December 26, 2022, added that from March 2022 forward Mason-Kelly continued to be discriminated and retaliated against because of race and disability. ROA.850. It specifically named Principal Everett, HISD Human Resources, the Assistant Superintendent of Middle Schools, HISD Leave Administration, HISD Recruiting/Hiring, and HISD Employee Relations. ROA.850-51. It stated that Everett harassed Mason-Kelly after her EEOC complaint and HISD grievance, subjected her to different terms and conditions of employment by removing handicap parking spaces, not maintaining proper air conditioning in her designated classroom, attempting to remove summer-school opportunities, subjecting her to unpaid wages, and denying a campus transfer. ROA.851.

Those sworn charges were not enough by themselves to prove every disputed fact at trial. But at summary judgment they were competent record materials that HISD itself placed before the court. They were based on Mason-Kelly's personal experience, digitally signed under penalty of perjury, and corroborated by deposition testimony and emails. A reasonable jury could credit them, and Rule 56 required all reasonable inferences to be drawn in Mason-Kelly's favor.

**F. Proposed Nonrenewal and Judgment**

HISD ultimately proposed nonrenewal of Mason-Kelly's contract. The district court found that on April 14, 2023, after nearly six months of absences HISD deemed unapproved, the Superintendent sent Mason-Kelly a certified letter stating that a proposal to nonrenew her contract was pending before the Board. ROA.955. Mason-Kelly appealed the proposed nonrenewal on April 27, 2023. ROA.955. She later accepted an Alief ISD position and withdrew the administrative appeal. ROA.955.

The district court granted HISD summary judgment. ROA.949-70. For Title VII and TCHRA discrimination, the court required a "final, adverse employment action" and dismissed the claim because Mason-Kelly did not identify a near-identical comparator. ROA.958-59. For retaliation, the court concluded that

Mason-Kelly had not supported adverse action or causation despite acknowledging evidence concerning the hot classroom and proposed nonrenewal. ROA.960-64. For ADA discrimination, the court held that Mason-Kelly was not qualified because she was absent and allegedly had no return plan, and that HISD provided or was not required to provide the requested accommodations. ROA.964-68. For ADA retaliation, the court adopted the same causation analysis used for Title VII/TCHRA retaliation. ROA.968-69. It then dismissed Hernandez under Rule 4(m). ROA.969-70.

## SUMMARY OF THE ARGUMENT

The judgment should be reversed because the district court did not view the summary-judgment record in the light most favorable to Mason-Kelly. The court repeatedly stated that Mason-Kelly provided no evidence. But the summary-judgment record contained evidence, and much of it was filed by HISD itself. HISD filed Mason-Kelly's deposition testimony, her sworn EEOC charges, her ADA accommodation forms, and contemporaneous emails documenting her complaints about accessibility, classroom temperature, retaliation, and transfer/reassignment. The court could fault counsel for not attaching additional evidence or for not citing the record with perfect precision, but it could not grant judgment if the movant's own evidence created genuine disputes of material fact.

The district court also applied the wrong discrimination standard. It required a "final" adverse employment action and treated lack of a near-identical comparator as fatal. That analysis cannot be reconciled with *Hamilton* and *Muldrow*. Title VII is violated when discrimination affects compensation, terms, conditions, or privileges of employment; the plaintiff need not show an ultimate employment decision, and the harm need not be significant. The district court's framework materially infected the analysis of denied opportunities, different terms

and conditions, accessibility restrictions, work assignments, compensation-related tutoring and mentoring issues, transfer denial, and proposed nonrenewal.

The retaliation rulings were likewise too narrow. The record contained protected activity: internal grievances over racial slurs and discrimination, EEOC charges, ADA accommodation requests, complaints about handicap parking, and complaints about the hot classroom. The record contained materially adverse actions: alleged loss of pay-affecting opportunities, inaccessible parking, hot classroom conditions, denial or breakdown of reassignment/transfer, unpaid leave/pay issues, and proposed nonrenewal. The record also contained causation evidence: temporal sequence, decisionmaker knowledge, Mason-Kelly's contemporaneous statements that the conduct followed her protected activity, and HISD's asserted reasons that a jury could find intertwined with the alleged retaliation and accommodation failures.

The ADA ruling similarly cannot stand. HISD did not dispute that Mason-Kelly had the professional qualifications to teach. The question was whether she could perform the essential functions with reasonable accommodation. The district court treated her later absences as dispositive, but those absences followed the disputed failure to accommodate and retaliation. A jury could find that an elevator key, accessible parking, a usable classroom, and a good-faith reassignment process

would have enabled her to continue teaching. Under *Feist*, reasonable accommodations include access to facilities and privileges of employment; they are not limited to measures that directly modify an essential job function. *Under Chevron Phillips, LHC Group, Cannon*, and *Cutrera*, the interactive process and reasonable accommodation inquiry generally cannot be short-circuited by drawing every factual inference for the employer.

Finally, the Hernandez dismissal and final judgment require correction at minimum. Rule 4(m) permits sua sponte dismissal only after notice to the plaintiff. The order dismissed Hernandez without prejudice, but the final judgment purports to dismiss the case with prejudice. If the Court reverses on the merits, the Hernandez ruling should be vacated. At minimum, the final judgment should be corrected so it does not convert any Rule 4(m) dismissal into a dismissal with prejudice.

## STANDARD OF REVIEW

This Court reviews summary judgment de novo, applying the same Rule 56 standard as the district court. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Summary judgment is proper only if the movant shows that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to the nonmovant, draw all reasonable inferences in the nonmovant's favor, and refrain from weighing evidence or making credibility determinations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Tolan*, 572 U.S. at 656; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A Rule 4(m) dismissal is generally reviewed for abuse of discretion, but legal questions embedded in the ruling are reviewed de novo. *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013). Whether the final judgment accurately conforms to the order and law is a legal issue reviewed de novo.

## ARGUMENT AND AUTHORITIES

### I. The district court erred by treating the case as evidentiary empty when HISD's own summary-judgment record created genuine disputes

The central problem with the summary-judgment ruling is not merely that Mason-Kelly disagrees with HISD's factual narrative. The problem is that the district court repeatedly adopted HISD's framing while discounting evidence HISD itself filed. Rule 56 does not require a nonmovant to win summary judgment with evidence outside the movant's appendix. It permits reliance on depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and other materials in the record. Fed. R. Civ. P. 56(c)(1)(A). Once the evidence is before the court, the question is whether it creates a genuine dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

HISD filed Mason-Kelly's deposition transcript. ROA.708-855. That transcript contains testimony that she complained about racial slurs toward Black students, ROA.724; filed a grievance against Hernandez after which retaliation began, ROA.742; submitted ADA forms to HISD, ROA.729; contacted HR about a reassignment and an open multicultural classroom position, ROA.730-31; escalated transfer concerns to HR leadership and others, ROA.731-33; complained

that Everett removed handicap parking signs, ROA.743-44; experienced a hot classroom and increased workload after complaining, ROA.743; and suffered an anxiety attack and medical leave after the disputed treatment. ROA.744.

HISD also filed the contemporaneous September 23, 2022 email in which Mason-Kelly told Everett and campus personnel that her classroom was 78 to 80 degrees after returning from FMLA leave, that handicap parking signs had been removed or obscured, that a lack of accessibility caused arthritis flare-ups and worsened PTSD/anxiety symptoms, and that she could not work and meet expectations in those conditions. ROA.845. HISD filed the later email in which she reported 80-degree conditions, nausea, dizziness, a headache, and an inability to teach if the A/C was not fixed. ROA.846.

HISD also filed the sworn EEOC charges. The original charge identified alleged race-based differential treatment, delayed elevator-key accommodation, pay-affecting mentoring differences, tutoring removal, hostile environment, and medical leave caused by the workplace. ROA.848-49. The amended charge expressly alleged continuing retaliation, named Everett and multiple HISD departments, and described removal of handicap parking, improper air conditioning, attempted removal of summer school opportunities, unpaid wages, and denial of a campus transfer. ROA.850-51.

That evidence may be contested. HISD may tell a different story. But summary judgment is not trial by affidavit, and the court cannot decide credibility. *Reeves*, 530 U.S. at 150; *Nall*, 917 F.3d at 340. The district court nonetheless characterized the case as lacking evidence. ROA.950, 959, 961-64. That premise was incorrect. The record contained enough evidence for a jury to decide whether HISD's stated reasons were true, whether the treatment was discriminatory or retaliatory, and whether the accommodation process failed.

HISD will likely argue that Mason-Kelly's response did not cite each item with precision. But the district court did not refuse to consider the response; it denied the motion to strike and stated that it reviewed the summary-judgment evidence. ROA.949, 959 n.1. Having reviewed the record, the court was still required to view the evidence in Mason-Kelly's favor. The court could not acknowledge evidence, such as the hot-room email, then draw the inference that it was merely an ordinary work-order issue, ROA.962, where Mason-Kelly's testimony and email supported an inference that the condition was part of alleged retaliation and disability-related inaccessibility. ROA.743, 845-46.

At minimum, the court should not have resolved disputed inferences about why Mason-Kelly stopped reporting to work. HISD framed the absences as unexcused and voluntary. Mason-Kelly's evidence framed them as the foreseeable result of unresolved disability accommodations, inaccessible parking, an

overheated room, workplace retaliation, and a breakdown after protected reports. ROA.729, 743-46, 845-51. A jury, not the court, must decide which version is credible.

## II. The Title VII and TCHRA discrimination ruling applied an outdated adverse-action and comparator framework

### A. Hamilton and Muldrow reject the "final adverse employment action" requirement applied below

The district court stated that Mason-Kelly had to prove a "final, adverse employment action" and then treated the absence of a comparator as fatal. ROA.958-59. That legal framework is no longer correct for Title VII discrimination. *Hamilton* held en banc that Title VII does not require plaintiffs to show an "ultimate employment decision"; the statute requires only discrimination with respect to hiring, firing, compensation, or the terms, conditions, or privileges of employment. 79 F.4th at 501-02. *Muldrow* then held that a Title VII plaintiff need show only "some harm" respecting an identifiable term or condition of employment; the harm need not be significant. 601 U.S. at 354-60.

The district court's reference to a "final" adverse employment action is materially inconsistent with that standard. ROA.958. Mason-Kelly did not need to prove that each challenged action was a final discharge, demotion, or ultimate

employment decision. She needed to show that the challenged discrimination affected compensation or the terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1); *Hamilton*, 79 F.4th at 501-02; *Muldrow*, 601 U.S. at 354-60. The TCHRA uses the same operative concepts: failing or refusing to hire, discharging, or otherwise discriminating in connection with compensation or the terms, conditions, or privileges of employment. Tex. Labor Code § 21.051. Texas courts look to Title VII guidance when interpreting the TCHRA. *Mission Consolidated Independent School District v. Garcia,* 372 S.W.3d 629 (Tex. 2012) at 633-34; *Alamo Heights Independent School District v. Clark,* 544 S.W.3d 755 (Tex. 2018).

Under the correct standard, the record contains actionable terms-and-conditions evidence. Mason-Kelly's sworn charge asserted that non-Blacks received unposted positions, that she was better qualified than the selected Hispanic female, that she was permitted to mentor only one person in a way that affected pay while non-Blacks mentored more, and that she was removed from tutoring. ROA.849-50. Her amended sworn charge described removal of handicap parking, inadequate classroom air conditioning, attempted removal of summer-school opportunities, unpaid wages, and denial of transfer as different terms and conditions after her protected activity. ROA.850-51. Her contemporaneous email documented accessibility restrictions and a hot classroom that she stated prevented

her from working and meeting expectations. ROA.845-46. Her deposition testimony corroborated the parking and hot-room evidence. ROA.743-44, 751.

Some of these facts also implicate compensation or professional opportunity. Mentoring, tutoring, summer school, unpaid wages, and transfer/reassignment are not abstract grievances. They affect pay, duties, professional advancement, workload, accessibility, and the practical ability to work. ROA.849-51. Even before considering proposed nonrenewal, a jury could find that Mason-Kelly experienced harm to identifiable terms, conditions, or privileges of employment under *Hamilton* and *Muldrow*.

### B. Comparator evidence was not the only path to a jury trial

The district court treated lack of a named comparator as fatal. ROA.959. That was error for at least three reasons. First, the prima facie framework is not rigid, mechanized, or ritualistic. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) at 802 n.13; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) at 253 n.6. It is an evidentiary tool designed to sharpen the inquiry into intentional discrimination, not a substitute for the statutory question.

Second, direct or circumstantial evidence may support an inference of discrimination without a perfect comparator. See *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309–12 (5th

Cir. 2004). Mason-Kelly's evidence was not limited to comparator allegations. She complained about anti-Black racial slurs toward students, testified that she complained about those slurs, and testified that retaliation began after she filed grievances. ROA.724, 742. Her sworn EEOC charge stated that Hernandez placed non-Blacks into unposted positions and that non-Blacks mentored more people, affecting pay. ROA.849-50. A jury could consider those facts, along with the sequence of events and HISD's stated explanations, in deciding discriminatory intent.

Third, even if comparator evidence were required for one theory, the record contains comparator-type evidence sufficient to survive the prima facie stage. Mason-Kelly's sworn charge identified non-Blacks receiving unposted opportunities and non-Blacks receiving more mentoring opportunities that affected pay. ROA.849-50. It also identified a selected Hispanic female for a position Mason-Kelly believed she was better qualified to hold. ROA.849. At the summary-judgment stage, this sworn evidence had to be credited, not disregarded because it was unfavorable to the movant that filed it.

The prima facie burden is "not onerous." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) at 253. The district court converted it into

an evidentiary trap that ignored the post-*Hamilton* statutory standard and discounted sworn record materials. That warrants reversal.

### C. A jury could find HISD's reasons pretextual or incomplete

HISD's central narrative was that Mason-Kelly worked only one week, exhausted leave, did not return, and accepted another job. ROA.680-706. But a jury could find that narrative incomplete. The relevant question is not whether Mason-Kelly was absent in isolation. It is why she was absent, whether HISD's asserted reasons were the real reasons for its actions, and whether discrimination or retaliation contributed. *Reeves*, 530 U.S. at 147-48; *Laxton v. Gap Inc.,* 333 F.3d 572 (5th Cir. 2003) at 578-79.

The record allows competing inferences. HISD viewed her as absent without approval. Mason-Kelly's evidence shows she returned with medical restrictions, sought accommodations, complained about removed handicap parking and a hot classroom, requested reassignment, said the conditions worsened PTSD/anxiety and arthritis, and then went out again after an anxiety attack and urgent-care visit. ROA.729, 743-46, 845-46. She also swore that HISD subjected her to unpaid wages and denied a campus transfer after her EEOC complaint and grievance. ROA.850-51. A reasonable jury could find that HISD's reliance on absences was intertwined with unresolved accommodation and retaliation issues.

A factfinder could also question HISD's explanation that nothing materially adverse happened because Everett put in a work order or because photographs showed some handicap parking somewhere on campus. ROA.962-63. Mason-Kelly's evidence was more specific: signs at the front were removed or changed; the accessibility symbol was obscured; she had to park in the back and wait for entry; and the room remained hot enough to cause physical symptoms and affect her ability to teach. ROA.743-46, 845-46. Those are factual disputes, not legal nullities.

## III. The retaliation claims under Title VII, the TCHRA, and the ADA should have been tried

### A. The record contains protected activity

Mason-Kelly engaged in several forms of protected activity. She complained internally about racial slurs toward Black students and filed a November 2021 grievance. ROA.724, 742. She filed an EEOC charge alleging race and disability discrimination on March 21, 2022. ROA.848-49. She signed an amended EEOC charge alleging continuing race, disability, and retaliation on December 26, 2022. ROA.850-51. She submitted ADA accommodation requests on September 20, 2022, including a request for physician-recommended reassignment and access to elevators/elevator keys due to arthritis. ROA.729. She also complained directly to

Everett and campus personnel about handicap parking and classroom conditions affecting her disabilities. ROA.845-46.

Title VII and the TCHRA protect opposition to unlawful employment practices and participation in EEOC proceedings. 42 U.S.C. § 2000e-3(a); Tex. Labor Code § 21.055; *Gorman v. Verizon Wireless Texas, L.L.C.,* 753 F.3d 165 (5th Cir. 2014*)* at 170. The ADA prohibits retaliation against employees who request reasonable accommodations or oppose disability discrimination.. See 42 U.S.C. § 12203(a); *Feist v. Louisiana, Department of Justice, Office of the Attorney General,* 730 F.3d 450 (5th Cir. 2013) at 454; *Cutrera v. Board of Supervisors of Louisiana State University,* 429 F.3d 108 (5th Cir. 2005) at 112-13. The protected-activity element was satisfied.

**B. The record contains materially adverse actions**

The district court's retaliation analysis minimized actions that a reasonable worker could view as materially adverse. For retaliation, *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006) at 67-68 rejects a narrow workplace-only or ultimate-decision standard. The question is whether the action might dissuade a reasonable worker from making or supporting a charge of discrimination. *Id*. at 68.

A jury could find material adversity from the combined record evidence. Mason-Kelly testified that after she complained about handicap parking, Everett became angry, placed her in a room with no air, increased what she had to do, and ignored her reports that the room was hot. ROA.743. She testified that the situation led to an anxiety attack and urgent-care treatment. ROA.744. The contemporaneous emails documented hot classroom conditions, removed or altered handicap parking, lack of key-card access, arthritis flare-ups, nausea, dizziness, headache, and inability to meet work expectations in those conditions. ROA.845-46.

Her sworn amended EEOC charge identified additional materially adverse actions: attempted removal of summer-school opportunities, unpaid wages, denial of a campus transfer, removal of handicap parking, and failure to maintain proper air conditioning. ROA.850-51. The district court acknowledged that HISD proposed nonrenewal of her contract. ROA.963, 955. Proposed nonrenewal of a teacher's contract is not trivial; it is a direct threat to continued employment. Even if each act were parsed individually, the totality of events could dissuade a reasonable employee from continuing to pursue grievances and EEOC charges.

### C. The record supports causation at the prima facie stage and pretext at the ultimate stage

The district court concluded that Mason-Kelly offered no evidence of causal link. ROA.963-64, 968-69. That conclusion disregards evidence of timing, knowledge, and retaliatory sequence. Mason-Kelly's September 20, 2022 ADA form explicitly stated that she had PTSD/anxiety due to continuous retaliatory actions and workplace bullying since filing grievances with HISD and reporting discriminatory and retaliatory actions to the EEOC. ROA.729. Her September 23 email told Everett that the lack of accessibility and classroom conditions worsened her conditions after returning from FMLA. ROA.845-46. Her December 2022 sworn charge stated that Everett harassed her after the EEOC complaint and HISD grievance and then listed the challenged terms and conditions. ROA.850-51.

A prima facie causal link does not require conclusive proof of retaliation. It requires only evidence from which a factfinder could infer a causal connection between the protected activity and the adverse action. *Porter v. Houma Terrebonne Housing Authority Board of Commissioners,* 810 F.3d 940 (5th Cir. 2015) at 948; *Gorman v. Verizon Wireless Texas, L.L.C.,* 753 F.3d 165 (5th Cir. 2014) at 170. Here, the same record that identifies protected activity identifies decisionmaker

knowledge and ensuing actions. ROA.729, 743-46, 845-51. That is enough to move the claim past the prima facie stage.

At the pretext stage, a jury could find HISD's asserted absence and nonrenewal rationale unworthy of credence, particularly if the cited absences were themselves connected to Mason-Kelly's protected activity, accommodation requests, or the alleged retaliatory conduct. *Reeves*, 530 U.S. at 147-48; *Laxton v. Gap Inc.,* 333 F.3d 572 (5th Cir. 2003) at 578-79. This is especially true because the challenged actions were not remote from the protected activity in the way HISD suggests. The record contains continuing activity and continuing alleged retaliation: March 2022 EEOC charge, September 2022 ADA requests and accessibility complaints, December 2022 amended EEOC charge, ongoing leave/return-to-work disputes, and April 2023 proposed nonrenewal. ROA.729, 845-51, 955.

The district court isolated each act and found no standalone proof that it was retaliatory. ROA.961-64. Retaliation may consist of a series of actions that, viewed collectively and in context, might dissuade a reasonable worker from engaging in protected activity. *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006). A jury could assess the entire course of conduct, including the undisputed proposed nonrenewal, in context.

## IV. The ADA discrimination and failure-to-accommodate ruling should be reversed

### A. The court improperly used Mason-Kelly's later absences to erase the accommodation question

The ADA protects a qualified individual who, with or without reasonable accommodation, can perform the essential functions of the position. 42 U.S.C. § 12111(8). The district court acknowledged that HISD did not dispute Mason-Kelly's professional prerequisites to teach. ROA.965. The remaining inquiry was whether she could perform essential functions with reasonable accommodation. *EEOC v. LHC Group, Inc.,* 773 F.3d 688 (5th Cir. 2014) at 697.

The district court answered that question by focusing on attendance. ROA.965-66. Attendance is important, and Mason-Kelly does not contend otherwise. But the court treated attendance as if it existed in a vacuum. It did not view the evidence in Mason-Kelly's favor as to why she stopped reporting. The record supported an inference that the absences followed a failed or disputed accommodation process: her doctor recommended reassignment, her ADA forms requested reassignment and elevator access, she complained about removed handicap parking and no key-card access, she complained of a hot classroom that

aggravated her conditions, and she suffered an anxiety attack after the disputed treatment. ROA.729, 743-46, 845-46.

*Rogers* and similar attendance cases do not authorize an employer to deny or fail to engage in reasonable accommodations, wait for the employee's condition to deteriorate, and then rely on the resulting absence as dispositive proof that the employee is unqualified. *Rogers v. International Marine Terminals,* Inc., 87 F.3d 755 (5th Cir. 1996) at 759, held that ability to appear for work can be essential, but this case turns on whether reasonable accommodations would have allowed Mason-Kelly to appear and perform. *LHC Group* and *Cannon* require that question to be addressed with the accommodation evidence viewed favorably to the employee. *EEOC v. LHC Group, Inc.,* 773 F.3d 688 (5th Cir. 2014) at 697-99; *Cannon v. Jacobs Field Services North America, Inc.,* 813 F.3d 586 (5th Cir. 2016).

Mason-Kelly had returned to work with restrictions. ROA.728, 952. She was not asking to remain away indefinitely at that moment. She asked for facility access, an elevator key, accessible parking, a usable classroom, and reassignment/transfer to reduce PTSD/anxiety and workplace-triggered symptoms. ROA.729, 845-46. A jury could find that those accommodations, individually or collectively, would have enabled continued performance.

### B. The requested accommodations were legally cognizable

The court treated chair and elevator-key access as satisfied and reassignment as unsupported. ROA.967-68. But that did not resolve the ADA claim. First, *Feist* held that reasonable accommodation is not limited to changes that directly enable performance of an essential job function; it also includes making facilities accessible and providing equal access to benefits and privileges of employment. 730 F.3d at 452-53. Parking and accessible entry are paradigmatic access issues. Mason-Kelly's evidence was that front handicap signage was removed or altered, a symbol was painted over, she had to park in the back, and she could not walk around because of arthritis. ROA.744-45, 845. That evidence created a triable access issue.

Second, the hot classroom was not merely discomfort. Mason-Kelly stated contemporaneously that the room was 78 to 80 degrees for three of four days, that she could not work and meet expectations in that environment, and that the lack of proper conditions worsened PTSD/anxiety and arthritis. ROA.845. She later reported nausea, dizziness, and headache. ROA.846. A jury could find that a usable classroom environment was necessary to equal access and performance, especially for a teacher returning from medical leave with known limitations.

Third, reassignment can be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). Mason-Kelly's physician recommended job reassignment, and she requested it on the ADA form. ROA.729. She testified that transfers could occur outside open-transfer season by agreement of principals, that she contacted HR about transfer in September 2022, that there was an open multicultural classroom position, that she completed an assessment, that she complained to HR leadership about the process, and that HR said someone would work with her to get her to another school before the process stopped. ROA.729-33. On this record, the court could not simply declare there was no transfer evidence. A jury could find HISD failed to engage in a good-faith interactive process or prematurely shut down reassignment.

The ADA interactive process requires employer and employee to communicate in good faith. *E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 621-22 (5th Cir. 2009); *Cutrera v. Board of Supervisors of Louisiana State University,* 429 F.3d 108 (5th Cir. 2005) at 112-13. If the breakdown is attributable to the employer, summary judgment is generally improper where the requested accommodation may have been reasonable. Here, a jury could find a breakdown in HR's response to transfer/reassignment, campus accessibility, and classroom conditions. ROA.729-33, 845-46.

## C. HISD's evidence did not eliminate disputes over disability discrimination

The district court relied heavily on the fact that Mason-Kelly eventually accepted another school-district position. ROA.955, 966. That fact does not defeat the ADA claim. An employee who seeks work elsewhere after an employer allegedly refuses accommodations, leaves her in inaccessible conditions, and proposes nonrenewal does not thereby admit she was unqualified at the relevant time. It may show mitigation or the practical need to preserve her livelihood. A jury could find that Mason-Kelly was capable of teaching in a properly accommodated environment and that HISD's failure to accommodate at Welch caused the breakdown.

Nor does signing out an elevator key on September 20 resolve the broader ADA record. ROA.952, 967. Mason-Kelly's physical access issues included parking, key-card building access, front-door access, walking limitations, and classroom conditions. ROA.744-46, 845-46. The mental-health accommodation request was a reassignment recommended by her physician because the workplace environment allegedly triggered PTSD/anxiety after protected complaints. ROA.729. A jury could find that HISD provided one narrow component while failing to address the broader known limitations.

Because the ADA requires an individualized inquiry into whether the employee can perform the essential functions with reasonable accommodation, *EEOC v. LHC Group, Inc.,* 773 F.3d 688 (5th Cir. 2014) at 697-99, the court should not have granted summary judgment on a record containing competing evidence about the cause of absences, the feasibility of reassignment, and the adequacy of accommodations.

## V. The Rule 4(m) dismissal of Hernandez and the final judgment require correction

After granting summary judgment to HISD, the district court sua sponte dismissed claims against Rosa Hernandez under Rule 4(m). ROA.969-70. Rule 4(m) permits dismissal on the court's own motion only "after notice to the plaintiff." Fed. R. Civ. P. 4(m). The order does not identify prior notice to Mason-Kelly that the court was considering sua sponte dismissal of Hernandez, nor does the docket excerpt show such notice. ROA.1-6, 969-70. Fifth Circuit precedent treats notice and opportunity to show good cause as essential features of Rule 4(m). *Millan v. USAA General Indemnity Co.,* 546 F.3d 321 (5th Cir. 2008) at 325-26; *Thrasher*, 709 F.3d at 511-12.

The Hernandez issue matters even if the dismissal was styled without prejudice. The case had been pending for years, and limitations consequences can

make a nominally without-prejudice dismissal practically severe. More importantly, the final judgment did not mirror the order. The order dismissed HISD with prejudice and Hernandez without prejudice. ROA.969-70. The separate final judgment states that the "above-styled case is DISMISSED with prejudice." ROA.971. At minimum, if any part of the judgment is affirmed, the Court should remand for correction so the judgment does not transform the Rule 4(m) dismissal into a dismissal with prejudice.

If this Court reverses summary judgment as to HISD, it should also vacate the Hernandez dismissal and allow the district court to address service after proper notice, a good-cause inquiry, and consideration of any discretionary extension.

## VI. The proper remedy is reversal, vacatur, and remand

Viewing the record in Mason-Kelly's favor, a reasonable jury could find that she engaged in protected activity, requested disability accommodations, was subjected to changed terms and conditions of employment, suffered materially adverse retaliation, and was pushed toward nonrenewal after a breakdown in accommodations and escalating retaliation. This Court need not decide whether Mason-Kelly will ultimately prove her claims. It need decide only whether the district court correctly removed those factual disputes from the jury. Because the court applied an incorrect adverse-action/comparator framework and drew

inferences in HISD's favor on ADA and retaliation issues, the judgment should be reversed.

## CONCLUSION

The district court's order granting summary judgment is premised on an impermissible acceptance of HISD's version of disputed facts, the drawing of inferences against the nonmovant, and the resolution of credibility and causation disputes that belong exclusively to a jury. Appellant Monique Mason-Kelly presented competent summary judgment evidence—including sworn testimony, written complaints, accommodation paperwork, medical documentation, internal communications, transfer and leave records, and EEOC/DOJ charge materials—demonstrating actionable race/color/national-origin discrimination, disability discrimination, retaliation, failure to accommodate, pretext, and adverse employment consequences culminating in the loss of her HISD employment. By treating HISD's narrative as undisputed truth, discounting Appellant's evidence and reasonable inferences, and requiring proof beyond what Rule 56 demands, the district court improperly converted the summary-judgment stage into a bench trial and denied Appellant her right to have a jury decide disputed issues of material fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Appellant Monique Mason-Kelly respectfully prays that this Court:

1. **REVERSE** the district court's March 9, 2026 Order granting Defendant Houston Independent School District's Motion for Summary Judgment;
2. **VACATE** the Final Judgment entered in favor of Defendant Houston Independent School District;
3. **REMAND** this case to the United States District Court for the Southern District of Texas for a jury trial on the merits of Appellant's Title VII, TCHRA, and ADA discrimination, retaliation, failure-to-accommodate, and related adverse-employment-action claims; and
4. Grant such other and further relief as this Court deems just and equitable.

Dated: May 26, 2026

Respectfully submitted,

*/s/ John L. Pittman III*
John L. Pittman III, Esq., LLM2
Texas Bar No. 24127922
**John L. Pittman III | Attorney At Law, APC**
925 B Street, Suite 604
San Diego, CA 92101
Phone: (760) 575-4040

Fax: (877) 757-5264
Email: jlpittmaniii@jp3law.com
**Attorney for Appellant MONIQUE MASON-KELLY**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains fewer than 13,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). Based on the word-processing system used to prepare this brief, the brief contains approximately 7,420 words in the counted portions.

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) and Fifth Circuit Rule 32.2 because it has been prepared in a proportionally spaced typeface using Microsoft Word-compatible word processing, Times New Roman, 14-point type, with 12-point or larger text used in any table formatting.

Dated: May 26, 2026

Respectfully submitted,

*/s/ John L. Pittman III*
John L. Pittman III
**Attorney for Appellant**
**MONIQUE MASON-KELLY**

# CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, which will send notification of such filing to all registered counsel of record, including:

Paul A. Lamp
Direct: 713-993-7075
Email: plamp@snll-law.com
Fax: 888-726-8374
Elizabeth Rice
Direct: 936-564-0010
Email: lrice@snll-law.com
Spalding Nichols Lamp Langlois
Suite 500
3700 Buffalo Speedway
Houston, TX 77098
**ATTORNEYS FOR DEFENDANTS-APPELLEES**

*/s/ John L. Pittman III*
John L. Pittman III
**Attorney for Appellant**
**MONIQUE MASON-KELLY**